**IN THE COURT OF APPEALS OF IOWA**

No. 14-0461
Filed May 29, 2014

**IN THE INTEREST OF C.D.,**
**Minor Child,**

**C.W., Father,**
**Appellant,**

**K.D., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

The mother and father separately appeal the termination of their parental rights to their child, C.D. **AFFIRMED ON BOTH APPEALS.**

Jane Orlanes of Orlanes Law Office, P.L.C., Clive, for appellant father.

Andrew Petrovich of Petrovich Law Firm, P.L.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Andrea S. Vitzthum, Assistant County Attorney, for appellee State.

Joseph Strong of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**VOGEL, P.J.**

The mother and father separately appeal the termination of their parental rights to their child, C.D. Both parents assert the court improperly found the State proved by clear and convincing evidence their parental rights should be terminated pursuant to Iowa Code section 232.116(1)(d), (h), and (i) (2013). Each requests an additional six months to prove their ability to care for C.D. safely. Each further asserts that, due to the bond they share with C.D., termination is not in his best interests. The record shows both parents have made very little progress since the child was initially removed from the home, which supports the juvenile court's conclusion that granting an additional six months is not warranted. We agree the State proved by clear and convincing evidence grounds to terminate pursuant to paragraph (h) and termination is in the child's best interest. Consequently, we affirm.

C.D., born February 2013, first came to the attention of the Department of Human Services (DHS) due to the mother's arrest in June 2013 for domestic abuse assault causing injury.[1] Upon investigation, it was discovered C.D. was not receiving adequate nutrition or medical care and was diagnosed with failure to thrive. Consequently, the allegations of denial of critical care resulted in a founded child abuse report against the mother. C.D. was removed from the mother's home in July and placed with his paternal aunt and uncle, though he was later placed in foster care, where he has continued to reside. C.D. was

---

[1] The mother assaulted her mother in the presence of C.D. The criminal charge related to this conduct was later dismissed.

adjudicated a child in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) and (6)(e) on August 13, 2013.

At no point subsequent to his removal has C.D. been placed in the full-time care of either parent. Professionally supervised visitation was offered, though the parents missed a significant number of appointments, resulting in the number of visits offered being reduced from three to two times per week. Transportation is an issue for both parents, as neither has a driver's license. The father has failed each driving test, and the mother suffers from severe eye problems, which results in her being unable to drive.

Appropriate housing has also presented problems for both parents. Each currently lives with a relative and neither residence is suitable for C.D. Neither parent has made any progress with regard to obtaining child-friendly housing, though, after being prompted multiple times, the mother is currently on the waiting list for housing.[2] The father is currently employed as a paper delivery person and intends to apply for disability, though he has made no effort to do so in the past several months. The mother is unemployed and receives disability.

Both parents have mental health issues. Despite prompting by DHS and referrals for services, each has only sporadically attended counseling sessions. The mother suffers from depression and anger issues, and the father is either bipolar or has depression, along with anger and severe sleep issues. It was recommended he see a psychiatrist, but he had yet to do so. However, the therapists have reported some progress with regard to the parents addressing

---

[2] The juvenile court did note, however, that the mother "is no further along on obtaining appropriate housing for herself and [C.D.] than she was when this case began."

their mental health problems. Additionally, the mother suffers from severe health issues, including kidney problems, partial blindness, and high blood pressure. As a result she sees a kidney doctor every month or two.

The juvenile court noted that the mother has to be prodded to take care of her own needs, such as maintaining personal hygiene, obtaining eye glasses, attending doctor's appointments, and seeking housing. One provider stated the mother feels like she needs "mothering," because she has acquired bad habits from her own family such as not bathing, wearing the same clothes for days, and not wearing shoes. On one occasion the mother showed up to visit with C.D. with dirty arms, dirty clothes, and no shoes. The father also appears to have problems regarding self-care, considering that at the termination hearing he appeared dirty, and it was clear to the court he had not recently bathed.

The father did complete an eight-week parenting class in December of 2013. The mother completed seven of the ten required classes in the "Parenting Way" parenting class. However, the Family Safety, Risk, and Permanency (FSRP) worker noted both parents were in need of further parenting instruction.

The following services were offered to the parents during the pendency of this proceeding: FSRP in-home services; offer of gas cards, bus passes, and bus tokens; daycare services; clothing allowance for the child; professionally supervised interactions through the FSRP provider; transportation assistance to the mother for visitations; referrals of the mother for "Lighthouse" housing and WIA Youth Work Readiness Program; post removal conference; family team meetings; parent partners; early access services through Heartland Area Education Agency; referrals for organizations that provide mental health

evaluations and individual counseling; housing assistance; parenting classes; anger management resources for the mother; and assistance with completing public housing applications along with creating a budget and short- and long-term goals. However, according to the DHS report, it took both parents approximately six months even to begin engaging in the services requested of them, and neither has made any substantial progress at achieving good mental health or appropriate housing goals. As one provider testified, "it has been very slow going."

Due to this lack of progress, the State petitioned for termination of both parents' parental rights. On February 20, 2014, a termination hearing was held, with both parents present and contesting termination. On March 10, 2014, the juvenile court issued an order terminating both parents' rights pursuant to Iowa Code section 232.116(1)(d), (h), and (i).[3] The mother and father separately appeal.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need to find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.* To terminate parental rights under Iowa Code

---

[3] To terminate parental rights, the State must prove by clear and convincing evidence: under Iowa Code section 232.116(1)(d), the child was adjudicated CINA for physical or sexual abuse or neglect, and that these circumstances continue despite receipt of services; under 232.116(1)(h), the child is three years old or younger, adjudicated CINA, removed from home for six of last twelve months, and the child cannot be returned home at the present time; and under 232.116(1)(i), the child meets the definition of CINA, the child was in imminent danger, and the receipt of services would not correct the conditions.

section 232.116(1)(h), the State must prove by clear and convincing evidence the child is three years old or younger, adjudicated CINA, removed from home for six of the last twelve months, and the child cannot presently be returned home.

We agree with the juvenile court the State proved by clear and convincing evidence grounds to terminate the parental rights of the mother and the father under paragraph (h) and that granting an additional six months pursuant to Iowa Code section 232.104(2)(b) is not warranted. Both parents have continued to demonstrate a lack of progress, such that neither would be able to for C.D adequately and safely. As an initial matter, in the visits that both parents attended, they interacted well with C.D. However, the mother missed twenty-six out of fifty-nine visits, and the father missed seventeen out of fifty-four visits. Both parents were also late to a majority of the visits. Because of the inconsistency in attending visitations, the number of visits offered by DHS was reduced from three to two visits per week. Moreover, throughout the pendency of this proceeding, neither parent was left alone with C.D. for more than thirty minutes, and neither progressed to unsupervised visitation.

It is also notable that neither parent challenged the substantive requirement of paragraph (h) that states the child cannot presently be returned to the parent's care. Rather, both request an additional six months. We agree with the juvenile court's assessment that:

> Reasonable progress has not been made . . . to achieve the permanency goal of reunification. As stated above, neither parent has made progress on establishing appropriate, safe housing for the child; there has been little progress by either parent in addressing their own physical and mental health needs; and neither has been able to demonstrate the ability to safely care for the child outside of a supervised, office setting.

The record supports the juvenile court's assessment, particularly the parents' and DHS worker's testimony at the hearing that C.D. cannot presently be returned to either parent's care. Moreover, it is critical that the parents promptly respond to services, which was not the case here. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). Consequently, we agree that C.D. cannot be returned to either parent's care and granting the parents an additional six months pursuant to Iowa Code section 232.104(2)(b) is not warranted.

Termination is also in the child's best interest. As previously noted, the parents have failed to make notable progress in achieving mental health goals, securing appropriate housing, or even progressing toward unsupervised visitation. While the FSRP worker reported C.D. is "comfortable" in both parents' presence, the record supports the juvenile court's finding that he is bonded with his foster parents.

Additionally, the foster parents have indicated a willingness to adopt C.D. When the child is this young, permanency within a reasonable period of time is extremely important. *See C.B.*, 611 N.W.2d at 494 (noting that "the law requires a full measure of patience with troubled parents who attempt to remedy a lack of parenting skills, [so] Iowa has built this patience into the statutory scheme of Iowa Code chapter 232 . . . . Thus, the legislature incorporated a twelve-month limitation for children in need of assistance aged four and up, and a six-month limitation for children in need of assistance aged three and below." (internal citations omitted)); *see also In re A.C.*, 415 N.W.2d 609, 613–14 (Iowa 1987)

(holding "[t]he crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems"). Consequently, despite some level of comfort C.D. shares with both parents, we agree with the juvenile court that termination is in the child's best interest. *See* Iowa Code § 232.116(2). Therefore, we affirm the order terminating the parental rights of both the mother and the father.

**AFFIRMED ON BOTH APPEALS.**